IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ODELL KIMMONS, KALMERON KIMMONS, and DILLON KING, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:25-cv-64-L |
| | § | |
| VALFAIR CONSTRUCTION INC. and COPART INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Odell Kimmons ("Odell"), Kalmeron Kimmons ("Kalmeron"), and Dillon King ("King") filed this lawsuit against Defendants Valfair Construction Inc. and Copart Inc., asserting claims of discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981. *See* Dkt. No. 1.

Defendants filed a Motion to Compel Arbitration and Stay the Proceedings under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). *See* Dkt. No. 20.

United States District Judge Sam. A. Lindsay referred the Motion to the undersigned United States magistrate judge for hearing, if necessary, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 23.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the Motion to Compel Arbitration [Dkt. No. 20], retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

## Background

Between September and November 2022, Plaintiffs began their employment with Valfair, a company that conducts mass excavation projects in the United States. *See* Dkt. No. 1 at 3-4. Valfair operates as a subsidiary of its parent company, Copart. *See id.* at 4.

On January 9, 2025, Plaintiffs filed this lawsuit against Defendants, bringing claims of race-based discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981. *See id.* at 16-28.

Defendants answered, asserting that Plaintiffs' claims are subject to binding arbitration agreements submitted by each Plaintiff. *See* Dkt. No. 10 at 14. And, on October 1, 2025, they moved to compel arbitration of the claims. *See* Dkt. No. 20.

Defendants have submitted copies of documents titled "Arbitration Agreement" with electronic signatures from Odell (dated September 14, 2022), Kalmeron (dated October 5, 2022), and King (dated October 27, 2022). *See* Dkt. No. 21 at 56-65. They have also submitted a declaration from Copart's Director of People and Culture, *see id.* at 66, audit reports for each Agreement, *see id.* at 81-107, and other onboarding documents electronically signed by each Plaintiff on the same day as their respective Arbitration Agreements, *see id.* at 109-181, 188-272.

Each Arbitration Agreement states, in part:

> **1. Introduction.** This Arbitration Agreement ("Agreement") is between me … and my employer (the "Company"). Any reference to Company will be a reference to Company's parents, subsidiaries, partners, divisions, DBAs, and affiliated entities (including without limitation Copart, Inc. and/or any of its subsidiaries) to which I have applied for employment or have been employed at any time. The Federal Arbitration Act (9

> U.S.C. § 1 et seq.) governs this Agreement, which evidences a transaction involving commerce. **All disputes covered by this Agreement between me and the Company will be decided by an arbitrator through arbitration and not by way of court or jury trial.**
>
> **2. Disputes covered by the Agreement.** Except as it otherwise provides, the Company and I mutually agree to the resolution by arbitration of all claims or controversies, past, present, or future, including without limitation, claims arising out of or related to my application for employment, employment, and/or the termination of employment that the Company may have against me or that I may have against the Company….
>
> This Agreement is intended to be as broad as legally permissible under the Federal Arbitration Act and to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. Unless specifically excluded below, this Agreement applies, without limitation, to any claims based upon or related to discrimination, harassment, retaliation, defamation (including claims of post-employment defamation or retaliation) … and all statutory and common law claims. … The Agreement covers, without limitation, all claims arising under … 42 U.S.C. § 1981 … and any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section entitled "Claims Not Covered by the Agreement."
>
> Additionally, the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement. However, the preceding sentence shall not apply to the "Class Action Waiver" described in Section 5 below. Regardless of anything else in this Agreement and/or the American Arbitration Association ("AAA") rules or procedures, any dispute relating to the interpretation, applicability, enforceability or formation of the Class Action Waiver may only be determined by a court and not an arbitrator. …
>
> The Company and I agree that the mutual obligations by the Company and me to arbitrate disputes provide adequate consideration for this Agreement.

*Id.* at 57, 60, 63.

Plaintiffs responded and denied signing the Arbitration Agreements. *See* Dkt. No. 26. And Defendants replied. *See* Dkt. No. 29.

## Legal Standards

"[A]rbitration is a matter of contract, so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

And the FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2.

So a party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration … is not in issue." *Id.* § 4.

And, under the "two-step process" to "analyze whether a party can be compelled to arbitrate, courts must ask first whether "'the party has agreed to arbitrate the dispute.'" *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (per curiam) (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)); *accord Cigniti Techs. Inc. v. Govinsadamy*, No. 3:23-cv-2460-L, 2024 WL 4329021, at *2 (N.D. Tex. Aug. 7, 2024) ("When determining a motion to compel arbitration, '[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation – whether the parties entered into any arbitration agreement at all.'" (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016))), *rec. adopted*, 2024 WL 4360144 (N.D. Tex. Sept. 30, 2024).

And, so, "the only issue at the first step is whether there is any agreement to

arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Kubala*, 830 F.3d at 202.

"When deciding whether the parties agreed to arbitrate the dispute in question, courts generally … should apply ordinary state-law principles that govern the formation of contract." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302-03 (5th Cir. 2021).

And, while courts have often held that they "do so against the backdrop of a strong presumption in favor of arbitration," *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019) (footnote omitted), despite the "frequent use of that phrase," "the FAA's 'policy favoring arbitration' … is to make 'arbitration agreements as enforceable as other contracts, but not more so,'" *Morgan v. Sundance*, 596 U.S. 411, 418 (2002) (quoting *Prima Pain Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)).

"Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA." *Town of Vinson v. Certain Underwriters at Lloyds London*, 706 F. Supp. 3d 602, 608 (W.D. La. 2023). That is, *Morgan* "clipped the wings of the oft quoted 'strong federal policy favoring arbitration' created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation." *Id.*

But, even prior to *Morgan*'s clarification, any policy favoring arbitration did "not apply to the initial determination whether there is a valid agreement to

arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

And, while "[o]rdinarily both steps are questions for the court," "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 201 (cleaned up).

That is, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 70 (2010) (cleaned up).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202.

And, so, "[i]f a party opposing arbitration contests the validity of the contract, that goes to the arbitrator; if the party contests the existence of a contract, it stays with" the court. *Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022).

Under this framework, "if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an analysis of contract formation – as it always does." *Kubala*, 830 F.3d at 202 (cleaned

up). That is, "[a]s always, [the court] ask[s] if the parties entered into a valid agreement." *Archer*, 935 F.3d at 279.

"If they did," the court must "turn to the delegation clause," and "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* (cleaned up); *Kubala*, 830 F.3d at 202 (cleaned up). "When determining that intent, [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Archer*, 935 F.3d at 279 (cleaned up).

"If there is a valid delegation, the court must grant the motion to compel," *id.* (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (cleaned up); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

But, if the agreement does not contain a valid delegation clause, and the court therefore has "the power to decide arbitrability," the court "must perform the ordinary arbitrability analysis" and address the scope of the arbitration agreement and whether the claim or claims are covered. *Archer*, 935 F.3d at 282; *Kubala*, 830 F.3d

at 203.

And, then, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302 (cleaned up).

## Analysis

## I. Valid Agreement

### A. Plaintiffs should be judicially estopped from disputing the existence of arbitration agreements.

On January 30, 2024, Odell filed a collective action lawsuit against Valfair in the United States District Court for the Western District of Texas under the Fair Labor Standards Act (the "Prior Lawsuit"). *See* Dkt. No. 21 at 274. The class members were Valfair's "current and former non-exempt employees who were paid in whole or in part on an hourly and or shift basis." *Id.* at 275. Kalmeron and King joined the action as class members. *See id.* at 285.

On May 20, 2024, the parties filed an unopposed joint motion to stay the collective action proceedings pending arbitration. *See id.* at 291. The motion stated that

> Defendant's counsel contacted Plaintiff's counsel after service was made to advise Plaintiff's counsel that Plaintiff, Dillon T. King, and Kalmeron A. Kimmons had all signed enforceable arbitration agreements requiring any claims to be brought in individual arbitrations and containing a collective action waiver.
>
> After reviewing the arbitration agreements, the Parties now move to stay this action pending completion of arbitration, to dismiss the collective action allegations of the Complaint, and request that this Court stay all further proceedings in this action pending the arbitrations.

*Id.* at 292. The Court granted the joint motion, dismissed the collective action allegations, and stayed the proceedings pending arbitration. *See id.* at 294.

Valfair argues that Plaintiffs' opposition to arbitration is barred by judicial estoppel because their position "is clearly inconsistent with their previous position" in the prior lawsuit. *Id.* at 20.

In their response, Plaintiffs argue that "[c]ollateral estoppel does not apply in this case because there has been no prior adjudication or final determination of any issue related to arbitration or the merits of Plaintiffs' claims." Dkt. No. 26 at 13.

With respect to collateral estoppel, the doctrine "precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) (footnotes omitted); *see also Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 228 (5th Cir. 2018) (per curiam) ("Issue preclusion or collateral estoppel prevents a party from litigating an issue it previously 'litigated and lost' in another action" and thus "'prevent[s] repetitious litigation of what is essentially the same dispute,'" in addition to "'conserving judicial resources, [ ] maintaining consistency, and [ ] avoiding oppression or harassment of the adverse party.'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979); RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmts. c, e (1982))).

But collateral estoppel and judicial estoppel are different legal doctrines and

not interchangeable. *See In re McCloskey*, No. 05-31232-H5-7, 2015 WL 1062102, at *19 (Bankr. S.D. Tex. Mar. 5, 2015), ("Judicial estoppel and collateral estoppel are different legal principles."), *aff'd sub nom. In Matter of McCloskey*, 659 F. App'x 196 (5th Cir. 2016).

Because Valfair's motion discusses judicial estoppel and not collateral estoppel, the undersigned will disregard the parties' arguments regarding collateral estoppel.

And, in any event, for purposes of collateral estoppel, "[a]n issue is not actually litigated if … it is the subject of a stipulation between the parties." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982).

With respect to judicial estoppel, the doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc) (citation omitted). The purpose of judicial estoppel "is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 293 B.R. 372, 378 (N.D. Tex. 2003) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); internal quotation marks and brackets omitted).

Judicial estoppel applies only where "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed*, 650 F.3d at 574.

Plaintiffs contend that they "have not taken any inconsistent position in these

proceedings" because "the prior matter Defendant references involved a separate proceeding concerning different claims, facts, and legal issues, where arbitration was merely stipulated to but never actually commenced or adjudicated." Dkt. No. 26 at 16.

But a party may be judicially estopped from asserting a position that is inconsistent with a previous stipulation. *See, e.g.*, *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 721-22 (E.D. Tex. 2019) (applying judicial estoppel because "[t]he School District stipulated that Plaintiff's allegations did not raise" certain issues and "[t]he Hearing Officer subsequently dismissed the action on this basis"); *see also Bosch v. Westport Fuel Sys. Canada Inc.*, 2026 WL 693189 (E.D. Tex. Feb. 25, 2026) (considering whether judicial estoppel applied to prior stipulations but declining to apply because the "subsequent proposed stipulations held that the same positions as each other" and "no stipulation by [plaintiff] was adopted by any court").

The parties' joint motion acknowledged that Plaintiffs had "all signed enforceable arbitration agreements requiring any claims to be brought in individual arbitrations." Dkt. No. 21 at 292. Plaintiffs' current position – that the arbitration agreements are invalid – is plainly inconsistent with the prior stipulation, which indicates that the parties agreed to arbitrate because they signed valid arbitration agreements, and not for some other reason. *Cf. In re Condere Corp.*, 226 F.3d 642 (5th Cir. 2000) ("This change of position in the context of the rejection proceedings did not necessarily implicate the Union's position on the arbitrability of its grievances."); *Green Tree Servicing, LLC v. Clayton*, No. 3:16-cv-59-WHB-JCG, 2016 WL 9450594,

at *3 (S.D. Miss. Sept. 28, 2016) ("[T]he agreement of the Arbitration Plaintiffs to stay briefing [on a motion to compel arbitration] based on" lack of jurisdiction "does not evidence an inconsistent position as to whether they intended to seek to compel arbitration."), *aff'd*, 689 F. App'x 363 (5th Cir. 2017); *DK Joint Venture v. Weyand*, 649 F.3d 310, 318 (5th Cir. 2011) ("Weyand's motion [to compel arbitration] in the previous case was based on an arbitration provision that is identical to the arbitration provisions that are at issue in the present case. However, there is no genuine inconsistency" with Weyand's argument that he did not agree to arbitrate because, "[i]n the present case … Weyand and Thiessen … are not signatories or parties to the contracts at issue.").

The court in the Prior Lawsuit granted the parties' joint motion and stayed the proceedings pending arbitration. *See* Dkt. No. 21 at 294. In doing so, it accepted the position that Plaintiffs had signed enforceable arbitration agreements. *See Abernathy v. Becon Constr. Co., Inc.*, No. 1:14-cv-466-KFG, 2016 WL 11384340 (E.D. Tex. June 22, 2016) ("[T]he [prior] court relied on Defendant's argument when dismissing [plaintiff]'s claims. It specifically dismissed [plaintiff]'s original suit and compelled him to arbitrate his [remaining] claims based on Defendant's argument that the [Employee Dispute Resolution Plan] constituted a valid arbitration agreement.").

And Plaintiffs "expressly" agreed that there "was a valid arbitration agreement" in the joint motion in Prior Lawsuit, so "[i]t cannot be said that [Plaintiffs'] position was inadvertent. *Id.* at *5.

And, so, the Court should find that Plaintiffs are judicially estopped from

asserting that no valid arbitration agreement exists.

**B. A valid arbitration agreement exists between the parties.**

Even if the Court declines to apply judicial estoppel, the evidence shows that a valid agreement to arbitrate exists between Defendants and each Plaintiff.

"[T]he initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 235 (5th Cir. 2013) (citation omitted).

"Under Texas law, a binding contract requires: (1) an offer: (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (cleaned up).

Considering the Arbitration Agreements submitted by Defendants, the undersigned finds that they each constitute a valid contract. Defendants made an offer by sending the Arbitration Agreements to each Plaintiff with their onboarding materials, *see* Dkt. No. 21 at 69, and Plaintiffs accepted that offer by signing their respective Agreements, *see id.* at 57, 60, 63. As to a meeting of the minds, each Agreement states "that the mutual obligations by the Company and [each Plaintiff] to arbitrate disputes provide adequate consideration for this Agreement." *Id.* And Plaintiffs electronically delivered the signed Agreements to Defendants. *See id.* at 69.

Because "[t]he chief consideration when determining the validity of contractual terms … is whether the party to be bound had reasonable notice of the terms at issue

and whether the party manifested assent to those terms," *Jones v. Homeaglow Inc.*, No. 3:25-cv-249-S, 2025 WL 2816792, at *5 (N.D. Tex. Oct. 1, 2025) (quoting *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 448 (N.D. Tex. 2019)), the Court turns next to Plaintiffs' contentions that the Arbitration Agreements are invalid because Plaintiffs never signed them, *see* Dkt. No. 26 at 8.

The Fifth Circuit "has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate, but [it has] explained that '[t]he party resisting arbitration bears "the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act,"'" where requested, as to the making of the arbitration agreement. *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (per curiam) (quoting *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) (quoting, in turn, *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987))).

The resisting party must also "make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true … [and] he must produce at least some evidence to substantiate his factual allegations." *Id.* (quoting *Dillard*, 961 F.2d at 1154).

Thus, "[t]o put the Agreement[s'] existence 'in issue' for FAA purposes, [P]laintiffs "must make at least some showing that under prevailing law, [they] would be relieved of [their] contractual obligations to arbitrate if [their] allegations proved to be true and produce some evidence to substantiate [their] factual allegations."' *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7,

2021) (per curiam) (quoting *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002); citing 9 U.S.C. § 4). And, "where competent evidence showing the formation of an agreement to arbitrate has been presented, § 4 requires a party resisting arbitration to produce some contrary evidence to put the matter 'in issue.'" *Gallagher*, 860 F. App'x at 357-58.

"The 'some showing' standard requires: unequivocally denying entering the contract, *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.3d 1272, 1278 (5th Cir. 1980); and producing evidence sufficient to substantiate that allegation, *Dillard*, 961 F.2d at 1154." *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *3 (5th Cir. May 4, 2022) (per curiam).

Meeting the "some showing" and "mandated unequivocal denial" standard "requires more than 'self-serving affidavits' containing hollow, bald assertions.'" *Id.* at *4 (quoting *Orr*, 294 F.3d at 710).

Here, Plaintiffs have submitted sworn declarations alleging that they were not presented with, and did not sign, any document titled "Arbitration Agreement" or the like. *See* Dkt. No. 26-1, 26-2, & 26-3. They have also submitted a declaration from Tracy Carrillo, another Copart employee, which states that Defendants never asked Carrillo to sign an arbitration agreement. *See* Dkt. No. 26-4.

Plaintiffs point to cases such as *Chester v. DirecTV, L.L.C.*, in which the court held that the plaintiff "met his threshold burden of putting the making of an arbitration agreement in issue" where he "unequivocally denied signing an arbitration agreement" in an affidavit. *See* Dkt. No. 26 at 10 (citing 607 F. App'x 362,

364) (5th Cir. 2015)).

But, in *Chester*, the plaintiff "provided some evidence that he did not sign an arbitration agreement – his affidavit," which contained "more than 'hollow, bald assertions'" because Chester explained "why he is convinced that he did not sign the arbitration agreement. Second, there is some corroborating evidence that Chester did not sign the agreement, given that DIRECTV has admitted that it cannot find the agreement. It is difficult to imagine what other evidence Chester could have presented to prove a negative (i.e., to prove that he did not sign the arbitration agreement)." 607 F. App'x at 364 & n.4.

Here, Defendants have provided copies of each signed Arbitration Agreement. *See* Dkt. No. 21 at 57, 60, 63. And Plaintiffs have not provided sufficient evidence to corroborate their denials.

Plaintiffs, in their declarations, allege that they were not "ever presented with, shown, or asked to sign any document titled 'Arbitration Agreement,' 'Agreement to Arbitrate,' or any similar document"; that they "did not execute or agree to any arbitration agreement in connection with [their] employment"; that they were "never informed by Defendant or any representative of Defendant that arbitration was a condition of [their] employment or that [they] would be required to waive any right to bring [their] claims in court"; that no "documents [they] received and completed during onboarding … contained or referenced an arbitration agreement"; that they "never reviewed, received, or electronically signed any arbitration document or acknowledgement"; and the like. Dkt. No. 26-1 at 1-2; Dkt. No. 26-2 at 2; Dkt. No. 26-

3 at 1-2.

These statements alone do not carry Plaintiffs' burden to put the Arbitration Agreements' formation or validity "in issue" through evidence sufficient to substantiate their denials. *See Horton v. Leaffilter North LLC*, No. 3:25-cv-2318-X-BN, 2026 WL 1142385, at *7 (N.D. Tex. Apr. 27, 2026) (finding similar allegations in plaintiff's affidavit, such as allegations that he "never agreed to an arbitration clause," insufficient to put "arbitration agreement's formation 'in issue'"); *Jones*, 2025 WL 2816792, at *5 (finding plaintiff's declaration denying agreement to arbitrate insufficient, on its own, "to put the making of the arbitration agreement 'in issue'" (quoting *Soni*, 2022 WL 1402046, at *4)).

Nor does Plaintiffs' attempt to corroborate their denials with another employee's declaration help them meet their burden. Carrillo's declaration contains the same conclusory language as Plaintiffs' affidavits, such as an allegation that "[a]t no point during [the] onboarding process was [Carrillo] shown, provided, or asked to sign any document titled 'Arbitration Agreement' or any document containing arbitration language." Dkt. No. 26-4 at 2. But the declaration does not contain additional facts or evidence supporting Plaintiffs' denials. And any evidence regarding a third party's onboarding process, without more, is not sufficient to prove the formation of an arbitration agreement in Plaintiffs' onboarding processes.

Plaintiffs have not provided any additional evidence or specific facts – such as proof of fraud or coercion – that explain why they are certain that they never signed the Arbitration Agreements.

And, so, the undersigned finds that there exists a valid arbitration agreement between Defendants and each Plaintiff.

## II. <u>Delegation Clause</u>

Because there is a valid agreement to arbitrate, the undersigned next considers whether the agreement includes a delegation clause.

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551-52 (5th Cir. 2018) (internal citations omitted).

"If there is a valid delegation, the court must grant the motion to compel," *Archer*, 935 F.3d at 279 (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Willis*, 944 F.3d at 579-80 (cleaned up).

Each Plaintiff's Arbitration Agreement contains the following clause:

> Additionally, the Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement. However, the preceding sentence shall not apply to the "Class Action Waiver" described in Section 5 below. Regardless of anything else in this Agreement and/or the American Arbitration Association ("AAA") rules or procedures, any dispute relating to the interpretation, applicability, enforceability or formation of the Class Action Waiver may only be determined by a court and not an arbitrator.

Dkt. No. 21 at 57, 60, 63.

Courts consistently find clauses using such language to be delegation clauses.

*See Kubala*, 830 F.3d at 204 (language stating that "[t]he arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute" is a delegation clause); *Rent-A-Ctr.*, 561 U.S. at 66 (language stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable" is a delegation clause).

And "generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence" that the parties intended to arbitrate threshold questions. *Arnold*, 890 F.3d at 552.

The undersigned finds that the language above evinces a clear intent to delegate threshold questions to an arbitrator.

And neither party challenges the enforceability of the delegation clause itself. *See Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018).

And, so, because there is a valid agreement to arbitrate and a valid delegation clause, the Court should grant Defendants' Motion to Compel Arbitration and Stay the Proceedings, retain this case, and administratively close it pending the outcome of arbitration. *See, e.g.*, *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 807-08 (5th Cir. 2020).

**Recommendation**

The Court should grant Defendants Valfair Construction Inc. and Copart Inc.'s Motion to Compel Arbitration and Stay the Proceedings [Dkt. No. 20] to the extent that the Court should retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 6, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE